IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAMAJ BAIR, | : Civil No. 3:23-cv-1860 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| SCI-ROCKVIEW, BOBBI JO SALAMON, FOOD SERVICES/CULINARY DEPT., | : |
| Defendants | : |

**MEMORANDUM**

Plaintiff Ramaj Bair ("Bair"), an inmate in the custody of the Pennsylvania Department of Corrections, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The remaining Defendant is Superintendent Bobbi Jo Salamon. Presently before the Court is Defendant's motion (Doc. 11) to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). Bair failed to respond to the motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons set forth below, the Court will grant the motion.

**I.   Allegations of the Complaint**

At all relevant times, Bair was housed at the State Correctional Institution, Rockview, Pennsylvania ("SCI-Rockview"). (*See* Doc. 1). On August 8, 2023, between 11:00 a.m. and

---

[1] Bair was directed to file a brief in opposition to Defendant's motion and was admonished that failure to file an opposition brief would result in Defendant's motion being deemed unopposed. (*See* Order dated January 10, 2024) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

11:45 a.m., Bair alleges that he was handed a lunch tray in his cell. (*Id.* at p. 4). While eating, he began to choke and could not breathe. (*Id.*). Bair's cellmate called for help by pressing the cell's intercom button. (*Id.*). Bair alleges that he fell to his knees and remained unable to breathe. (*Id.*). His cellmate tried to stop the choking by hitting Bair on the back and squeezing his lower chest, until the obstruction was dislodged. (*Id.*). Bair was then able to breathe. (*Id.*). Bair asserts that he was choking on a plastic wrapper labeled "Westcreek." (*Id.*).

When the correctional officers collected the trays, Bair informed them that he had been choking. (*Id.*). The correctional officers allegedly told Bair that the call buttons did not work, they took the plastic to preserve it, and notified medical. (*Id.*). Medical staff did not treat Bair on that day, so he requested a sick call. (*Id.*). The following day, Bair was treated by a nurse, though he alleges the nurse did not examine his throat and did not review his initial intake report, which documented his prior throat surgery. (*Id.*). Bair was given a prescription for Pepto Bismol and did not receive any additional treatment. (*Id.*). As a result of the choking incident, Bair suffered a sore throat for one week and vomiting. (*Id.* at p. 5).

Bair asserts that he could have died if his cellmate was not there because the call buttons were not functioning. (*Id.* at p. 4).

## II. Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

2

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

3

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

### III.  Discussion

#### A.  Claims against Superintendent Salamon

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Individual liability can be imposed under section 1983 only if

4

the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

With respect to supervisory liability, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010 (quotation and alteration marks omitted)). As to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it. *See C.N. v.*

5

*Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). With respect to the first, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

The complaint lists Bobbi Jo Salamon as a Defendant, but does not specify what role, if any, Superintendent Salamon played in the alleged denial of Bair's rights. Under the most liberal construction, Bair's complaint fails to state a claim for relief against Defendant Salamon. Based upon the above legal standards, it is clear that any claims against Defendant Salamon are subject to dismissal based on Bair's failure to set forth any factual allegations against her in the complaint. Without such factual allegations, it is impossible to conclude that Defendant Salamon deprived Bair of any constitutional rights. *See Hudson v. City of McKeesport*, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming dismissal of defendant because complaint did not provide any basis for a claim against him).

The only reference to Defendant Salamon is an allegation that, in her role as Superintendent, she is responsible because "it's her job to ensure all training requirements are met and protocols are followed." (Doc. 1, p. 5). As noted above, a plaintiff may establish supervisory liability if he demonstrates that a supervisor established and

6

maintained a policy, practice, or custom that directly caused the constitutional harm. *Santiago*, 629 F.3d at 129 n.5.  Bair, however, has not demonstrated that Defendant Salamon knew of any unreasonable risk and was indifferent to that risk by failing to implement such a policy.  See *Merring*, 558 F. Supp. 2d at 547.  The allegations of the complaint amount to a blanket invocation of vicarious liability.  Moreover, Bair failed to establish that Defendant Salamon personally participated in any alleged constitutional violation or approved of it.  See *C.N.*, 430 F.3d at 173.  Bair's federal constitutional claims against Superintendent Salamon fail for want of personal involvement.  The Court will grant Defendant's motion on this ground.

      **B.**    **Failure to Train Claim**

Bair also suggests that Defendant Salamon is liable for failing to provide adequate training and supervision.  (Doc. 1, p. 5).  "[T]he inadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the person with whom the [inadequately trained subordinates] come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  Without such a pattern, a plaintiff must allege that the harm suffered was so "predictable that failure to train the [subordinate] amounted to *conscious disregard*" for his rights.  *Id.* at 71 (emphasis in original).  However, "[w]ithout notice that a course of training is

deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. Bair has made only conclusory failure to train allegations. (Doc. 1, p. 5). The bare allegations, without further explanation, are insufficient to plausibly allege that Defendant Salamon failed to adequately train subordinates at SCI-Rockview. Accordingly, the failure to train claim against Defendant Salamon will be dismissed. In sum, the Court finds that Bair's complaint fails to adequately allege that Defendant Salamon was personally involved in the alleged constitutional deprivations, and she is entitled to dismissal from this action.

## IV.   Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth above, Bair's claims are legally and factually flawed; thus, the Court concludes that curative amendment would be futile. Moreover, Bair failed to respond to Defendant's motion to dismiss, despite being ordered to do so.

8

## V. Conclusion

Based on the foregoing, the Court will grant Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 11).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: February 15, 2024